UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARILYN GEIGER,                                          Case No. 1:10-cv-456

      Plaintiff,                                           Weber, J.
                                                         Bowman, M.J.
vs.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Marilyn Geiger filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. See 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error. Defendant disputes both claims. As explained below, I conclude that the finding of non-disability should be REMANDED, because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On February 14, 2005, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging a disability onset date of February 13, 2004, due to Myopic Macular Degeneration with a history of Retinal Detachments, Glaucoma, and Cataracts in Plaintiff's eyes. (Tr. 67-72, 80). Plaintiff was born on May 4, 1958, thus, she was 45 years old at the time of her alleged disability and 50 years old at the time of the ALJ's decision. (Tr. 19). After Plaintiff's claims were denied initially and upon reconsideration, (Tr. 25-29, 31-34), she requested a hearing *de novo* before an Administrative Law

Judge. (Tr. 36-43). On March 6, 2008, an evidentiary hearing was held in Cincinnati, Ohio, at which Plaintiff was represented by counsel. (Tr. 448-535). At the hearing, ALJ Deborah Smith ("ALJ Smith") heard testimony from Plaintiff, Lindsay W. Bibler, M.D. ("Dr. Bibler"), an impartial medical expert, and George E. Parsons ("VE Parsons"), an impartial vocational expert. (Tr. 448-501). At said hearing, ALJ Smith left the record open to obtain additional test results and clarification from Plaintiff's treating ophthalmologist, Howard Bell, M.D. ("Dr. Bell"). (Tr. 499-500). After the evidence was obtained, Dr. Bibler again testified before the ALJ, Plaintiff, and Plaintiff's attorney at a supplemental administrative hearing on June 5, 2008. (Tr. 502-535).

On July 28, 2008, the ALJ entered her decision denying Plaintiff's DIB application. (Tr. 10). The Appeals Council denied Plaintiff's request for review. (Tr. 5-8). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since February 13, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following "severe" impairments: diminished vision secondary to myopic macular degeneration (OU), glaucoma (OU), history of retinal detachment (OS), and history of cataracts (OU) (20 CFR 404.1520(c)).

…………………

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

2

…………………….

5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant's job must require no more than occasional reading, no commercial driving, no working at heights, no working around dangerous equipment, no work under unusually bright lights, and no high speed production work. She must be able to wear glasses with dark or tinted lenses, if desired.

…………………….

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

…………………….

7. The claimant was born on May 4, 1958 and was 45 years of age (defined as a "younger individual age 45-49") on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

…………………….

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566 and 404.1568(d)).

…

The vocational expert testified that such an individual could perform the following representative occupations: production planning and expediting clerk (77,000 sedentary jobs and 74,000 light jobs nationwide; 648 sedentary jobs and 617 light jobs locally); telemarketer (310,000 sedentary jobs nationwide; 2,020 sedentary jobs locally); dispatcher (80,000 sedentary jobs and 16,000 light jobs nationwide; 522 sedentary jobs and 108 light jobs locally); and receptionist (623,000 sedentary jobs nationwide; 4,609 sedentary jobs locally).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from February 13, 2004 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15-20). Thus, ALJ Smith concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was not entitled to DIB.

On appeal to this Court, Plaintiff maintains that ALJ Smith erred by improperly giving the testimony of Dr. Bibler, a non-examining consultant too much weight, and rejecting the opinion of Dr. Bell. In addition, Plaintiff argues that ALJ Smith erred by not including a limitation in her RFC finding that would allow Plaintiff to rest her eyes periodically throughout the day. Accordingly, Plaintiff argues that ALJ Smith committed reversible error by finding that, despite her impairments, the record demonstrated that she had the residual functional capacity ("RFC")[1] to perform a reduced range of work.

**II. Analysis**

**A. Applicable Law**

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's denial of benefits. Substantial evidence is "such relevant evidence as a reasonable mind might except as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Matthews,* 574 F.2d 359 (6th Cir.

---

[1] The Agency's regulations define residual functional capacity as "the most you can still do despite your impairments." 20 C.F.R. § 404.1545(a)(1).

4

1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. … The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

To qualify for DIB, the claimant must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§416(i), 423. Establishment of a disability is contingent upon two findings. First, the claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). Second, the impairments must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, the Commissioner determines whether the claimant is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the claimant is not currently engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments; if not,

5

then a finding of nondisability is made and the inquiry ends.  Third, if the claimant has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing).  If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the claimant's regular previous employment.

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).  The Commissioner may meet his burden of identifying other work the claimant can perform through reliance on a vocation expert's testimony to a hypothetical question.  To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must accurately reflect the claimant's mental and physical limitations.  *Early v. Commissioner of Social Security,* 594 F.3d 504, 516 (6th Cir. 2010); *Howard v. Commissioner of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002); *Felisky,* 35 F.3d at 1036.  However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."  *Stanley v. Secretary of H.H.S.,* 39 F.3d 115, 118 (6th Cir. 1994).

### B.  Specific Errors

### 1.  The ALJ's Rejection of Treating Physician's Opinion

Plaintiff argues that in this case, that ALJ Smith failed to afford adequate weight

6

to the opinion of Plaintiff's treating ophthalmologist, Dr. Bell. (Doc. 4). The Social Security regulation pertinent to evaluation of a treating physician's opinion states: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2)(emphasis added). In determining the weight to give to any medical source opinion, an ALJ must also consider: 1) the examining relationship between the medical source and claimant; 2) the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship; 3) support by medical evidence; 4) consistency of the opinion with the record as a whole; 5) the source's area of specialization; and 6) any other factors which support or contradict the opinion. *Id.*

"If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her [sic] rejection." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. §1527(d)(2). Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230-31 (6th Cir. 1990)(affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine). Although the opinions of treating physicians must be considered, ultimately the determination of a claimant's RFC is "reserved to the Commissioner." 20 C.F.R. §404.1527(d)(2), §1527(e)(2).

7

In rejecting the limitations assessed by Dr. Bell, ALJ Smith relied upon the testimony of the impartial medical examiner, Dr. Bibler, an ophthalmologist, who reviewed Plaintiff's entire medical history and heard the testimony of the Plaintiff. (Tr. 17). Notwithstanding the length of the treatment relationship and Dr. Bell's expertise, the ALJ rejected the opinion of Dr. Bell and determined that "[b]ecause Dr. Bibler is a specialist, who had the opportunity to review all the medical evidence and observe [Plaintiff] at both hearings, her opinion of [Plaintiff's] functional limitations is given great weight." (*Id.*). As a result, ALJ Smith gave controlling weight to Dr. Bibler's testimony that there was no proper explanation for Plaintiff's blurred vision, that Plaintiff's primary impairment was the holes in her vision, which affected her "near" vision, that Plaintiff could perform "near work" up to 1/3 of the workday. (Tr. 16). Furthermore, the ALJ noted that Dr. Bibler also testified that Plaintiff "would not be able to perform a reading or near-task job all day because having to focus to see the missing areas would be slow and tiring," that she has never seen a situation where an individual needed an hour of rest after reading 15 minutes, and, that contrary to Dr. Bell's opinion, there was no explanation in the record as to why Plaintiff's visual impairments would cause her to have difficulty writing. (Tr.16-17).

In determining Plaintiff's limitations, ALJ Smith stated that she gave consideration to the statements and opinions offered by Dr. Bell. (Tr. 17). ALJ Smith specifically stated that, on January 12, 2005, Dr. Bell noted that Plaintiff had difficulty driving and reading and, as a result, suggested that Plaintiff's visual impairment was significant enough to "place her on disability." (*Id.*). On July 30, 2006, Dr. Bell completed a Residual Functional Capacity Evaluation on Plaintiff's behalf (Tr. 383-385) wherein he

8

opined that Plaintiff was forever limited in reading, driving and day-to-day activity. (Tr.17). Dr. Bell noted that Plaintiff could only read for about 15 minutes at a time and then had to rest for an hour. (Tr. 17, 437). The ALJ found that Dr. Bell's opinion was not consistent with the claimant's own testimony stating, "[i]n fact, the evidence provided by the claimant …, shows that she is *not* totally disabled or unable to complete routine, daily activities. She does many activities on a daily basis…". Without providing any additional reasoning, ALJ Smith then found that "to the extent Dr. Bell's comments are inconsistent with Dr. Bibler's testimony, they are given no weight." (Tr. 17).

ALJ Smith also explains, later in her decision, that the extreme limitations Dr. Bell detailed in his assessments were inconsistent with statements made by Plaintiff that she was able to watch television, drive for short distances, attend church twice a week, participate in Yoga and water aerobics classes, and attend occasional club meetings. (Tr. 18, 452-453, 458, 463). In addition, Plaintiff also testified that she does cooking, housework, and laundry on a regular basis. (Tr. 463-464). Moreover, the Court notes that Dr. Bell was also inconsistent on at least one occasion. For instance, Dr. Bell opined that Plaintiff is visually disabled, however, he previously reported in a letter dated March 17, 2008, that Plaintiff did *not* have the degree of visual field loss or visual acuity in her right eye to meet the criteria of the disability regulations. (Tr. 437). *See* 20 C.F.R. §404.1527(d)(4) ("Consistency." Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Based on the lack of consistency with Plaintiff's own testimony, the Court finds that there is substantial evidence to reject Dr. Bell's opinions, to the extent they were in conflict with Dr. Bibler. This, however, is certainly a close call but since the Court is

9

ordering remand, for the reasons set forth below, the ALJ should re-evaluate the weight given to Dr. Bell's opinion.

**2. ALJ failed to accept the restriction of the need for Plaintiff to periodically rest her eyes.**

Plaintiff argues that ALJ Smith erred by not including a limitation in her RFC finding that would allow her to rest her eyes periodically throughout the day. (*Id.*). The ALJ limited Plaintiff's job to those that require no more than occasional reading, no commercial driving, no working at heights, no working around dangerous equipment, no work under unusually bright lights, and no high speed production work. (Tr. 16).

As stated above, Dr. Bell opined that Plaintiff "can only attempt to read for about 15 minutes or so and then her eyes go out of focus, and then she starts to have discomfort and pain. Whenever she does that she has to stop reading for an hour and this vicious cycle is something that she deals with on an ongoing basis. [She] has to periodically just rest her eyes, whether she is reading or doing anything else for 15 or 20 minutes at a time during the day." (Tr. 437-438).

Likewise, Dr. Bibler agreed that sustained reading would be a problem. (Tr. 517-518). She stated "Dr. Bell commented on her inability to sustain reading. I think that is reasonable. I believe and understand that." (Tr. 514). When asked by Plaintiff's counsel how long Plaintiff would need to rest after 15 minutes of sustained reading, Dr. Bibler stated that she could not answer that and only stated that needing an hour would be unusual. (Tr. 518). When counsel tried to raise the question again, Dr. Bibler then stated "well, she has stated she needs an hour after 15 minutes of constant reading, or at least that's what Dr. Bell wrote. And I am suggesting that if it wasn't 15 minutes of

10

solid reading, then there wouldn't be a visual rest period required. I mean glancing at things intermittently is totally different than sustained reading for a long period of time." (Tr. 519). Counsel tried again by asking "if she had sustained use of her eyes though, you would agree that there would be some rest period needed?" to which Dr. Bibler replied "Absolutely." (Tr. 519-520). Dr. Bibler then testified that sustained use would be 15 to 20 minutes. When asked what a reasonable rest period would be she testified that it is "Individual. That's not me to determine." (Tr. 520). Finally, Dr. Bibler testified that "It's extra effort to read things, and if it's constant it requires rest and if it's intermittent it would not be as bad." (Tr. 525).

> The follow exchange then occurred between Plaintiff's counsel and VE Parsons:
>
> Q Okay. And when she is doing these jobs that you've identified, I mean these jobs, even though she's not specifically reading a book or looking at a computer screen, these jobs do require the use of the eyes for close visual acuity. Is that not correct?
>
> A Occasional. To determine vocationally occasional, meaning up to one-third of the time.
>
> Q Up to one-third of the day. And the, the that may be a period where she has to use her eyes on a consistent basis for a while and then she may get a break. She may have to do this for 30 minutes, 45 minutes and get a break. There's no activity. I mean is that fair to say?
>
> A Yes.

(Tr. 532).

Clearly there is an inconsistency between the RFC as found by ALJ Smith and the testimony of Dr. Bibler. In the ALJ's decision, she relies on Dr. Bibler's testimony but treats Dr. Bibler's use of the word "occasional" as meaning up to one-third of the day. However, from a review of Dr. Bibler's testimony, that is not how she used the word. In fact, Dr. Bibler testified "I'm not familiar with the vocational stuff, I leave that to

11

Dr. Parsons." (Tr. 516). Dr. Bibler's testimony makes clear that, in her opinion, Plaintiff can "glance" at things on an intermittent basis where as the hypothetical given to the VE included the limitation of "occasional reading" meaning reading up to one-third of the work day. Furthermore, as Dr. Bibler and Dr. Bell opine, if a limitation of occasional reading means that there can be sustained reading up to 15 to 20 minutes at a time then a rest period needs to be permitted. The ALJ's failure to address this limitation was in error.

This presents a close case as to whether simply reverse and remand for an award of benefits, or whether to remand for further review under sentence four of 42 U.S.C. §405(g). However, because it may have been unclear at times as to the definition Dr. Bibler was associating with her use of the word "occasional," the Court concludes that remand is the better course.

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT:**

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ be instructed to remedy the inconsistencies identified in this Report and Recommendation concerning Plaintiff's need to rest her eyes and the limitations set forth by the ALJ;

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                           */s Stephanie K. Bowman*
                                           Stephanie K. Bowman
                                           United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MARILYN GEIGER, | Case No. 1:10-cv-456 |
| Plaintiff, | Weber, J. |
| | Bowman, M.J. |
| vs. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).